Moritz Mahler, Appellant, *against* Moses Schloss *et al.* Respondent.

(Decided June 18th, 1877.)

The plaintiff took a bill of sale of goods, paying the price named therein, and executing a written agreement to return them at an advance specified, if the former owners desired to repurchase within two months, and, in that event, to pay over the proceeds of those sold meantime, less ten per cent. commission, and the testimony of the parties to the transaction was conflicting as to whether it was an absolute sale or a transfer as security for the sum advanced :—*Held,* that on the face of the instruments, in the absence of evidence going to show fraud on the part of the buyer, or undue inadequacy in the price paid, the transaction was in effect an absolute sale with a right to repurchase, and valid as against creditors levying on the goods under execution against the vendor, and that on the conflict of testimony, the jury should determine the character of the transaction.

The evidence as to the change of possession being in conflict,—*Held,* that, assuming that the vendor remained in possession, as was found by the jury, the plaintiff was entitled to go to the jury on the question of the *bona fides* of the transaction on his part.

The weight of the evidence on the question of the change of possession, considered.

An instruction to the jury by the judge at the trial, that "if it was a conditional sale, then it was void as against creditors,"—*Held,* error.

An instruction that if it was a mortgage, it was void for the reason that the creditors had the right to take the goods under the execution against the former owners, the goods being in the possession of the latter, and being to all intents and purposes theirs,—*Held,* erroneous, the questions of the character of the transaction, and of the plaintiff's good faith, not being submitted to the jury.

APPEAL by the plaintiff from a judgment of this court, entered upon the verdict of a jury, after a trial before Judge VAN BRUNT, and from an order made at special term by Chief Justice CHARLES P. DALY, denying a motion for a new trial upon the minutes of the judge at the trial, under the exceptions taken thereto.

The action was brought for the conversion of a lot of about 200 silk umbrellas.

The defendants justified under an execution in favor of the two defendants, Schloss (the marshal who made the seizure being joined as a defendant), against Francis Carlton and Cornelius C. Carlton.

It appeared at the trial that the plaintiff rented to the Carltons, doing business as F. Carlton & Sons, a portion of his store for the sale of umbrellas, upon a rental equal to one-tenth their gross sales, and subsequently a bill of sale of all their stock in his store was executed by them to the plaintiff, as of date July 1st, 1874, the plaintiff giving them in return a check for the sum named as the consideration in the bill of sale, and a written agreement in the following terms :

"*New York, July 1st,* 1874.

"Mr. M. Mahler agrees this day, if F. Carlton & Sons desire to repurchase the invoice of umbrellas and parasols dated July 1st, 1874, $300, within two months from this date, Mr. M. Mahler will return to them at a profit of $25, but whatever Mr. Mahler sells by the 1st of September, and amounting over $325, he, the said M. Mahler, agrees to hand over to said Carlton & Sons, less ten per cent. commission on all sales.

"Signed,          M. MAHLER."

On July 13th, 1874, the property in question was levied upon under the defendants' execution, the service of summons on one of the Carltons having been made June 22d, 1874, and judgment entered July 3d, 1874.

The plaintiff, as a witness in his own behalf, testified that the bill of sale represented an absolute sale ; that no one other than himself had any interest in the goods, nor any

Mahler v. Schloss.

right to their possession, nor to the return of them under any consideration; that his book-keeper made the purchase, but he was "partly present," "partly heard" the negotiation, and believed he heard the whole of it.

He further testified that Cornelius C. Carlton, with his brother, his only clerk, left his store on July 1st, 1874, and did not return; and that neither of them afterward did business there.

The defendant, Israel M. Schloss, called for the defense, testified that he saw Carlton's brother in the plaintiff's store showing umbrellas to customers in July, a day or two before the levy.

Cornelius C. Carlton testified for the defense that he borrowed the $300 and gave the bill of sale as security; that he had clerks in the store continuously up to the time of the seizure engaged in selling goods; that he never was there much himself either before or after July 1st, 1874, and on cross-examination swore as follows:

" Q. When did you first go to Mr. Mahler's place to transact any business?

" A. As I said [on direct], I believe it was about the 1st of June, or previous to that.

" Q. When did you leave there?

" A. Well, I never was there, exactly, myself.

" Q. When did you leave there?

" A. Well, I never was there, exactly, myself.

" Q. When did you leave there?

" A. I never left there.

" Q. When were you in the store yourself for the last time?

" A. After the sale had been made.

" Q. Were you there on the 1st of July?

" A. Yes.

" Q. Every day between that and the time of the seizure?

" A. No, never; every other day I had people attending the store.

" Q. Were you there on the 1st of July yourself?

" *A.* Yes.

" *Q.* Were you there the 2d of July?

" *A.* I could not say.

" *Q.* On the 3d?

" *A.* Possibly I was, and perhaps not. I never made a constant practice of going every day.

" *Q.* Is there one day between the 1st and the 13th of July that you can say you were at that store?

" *A.* Why, of course I might have been."

Question repeated.

" *A.* I could not positively say. I was there on the 1st I know, for this transaction refreshes my memory about it."

John McDonough, a defendant, and the marshal who made the levy, testified for the defendants that there were only 91 umbrellas seized. " Six of the commonest ; one $1 12½ ; then about two dozen sun umbrellas, at $1 or $2 at the outside; then some at $3, with ivory handles; then some at $3 50 and $4; there were some five, six or seven regular rain umbrellas, worth about $5, some $4 75 and $5 50. I believe they brought something near that price."

He further testified that he was present at the auction and bought four dozen and a half umbrellas himself, and that the sum total realized was $106.

The other facts are stated in the opinion.

*W. A. Beach,* for appellant.

*G. H. & B. F. Watson,* for respondents.

ROBINSON, J.—It clearly, and without dispute, appeared on the trial that on and prior to June 1st, 1874, the plaintiff occupied a store at No. 849 Broadway, for the sale of articles of fur ; that on or about that day he granted to one Cornelius C. Carlton, for the firm of F. Carlton & Sons, the right to use a part of the store with a front window for the sale of umbrellas, at a rent of ten per cent. upon their gross sales. On the 1st of July following, Carlton & Sons executed to the plaintiff, upon the expressed consideration of $300, a bill of

sale of all their stock of umbrellas, consisting of seven dozen, at $4 28½ each.

An instrument in writing was produced on the part of the defendants, which the jury might find from the testimony to have been executed at the same time by the plaintiff, or with his authority, and as part of the same transaction, granting said F. Carlton & Sons an option to repurchase the same invoice of umbrellas within two months for $300, together with a profit to him of $25 ; the proceeds of whatever he should sell by the 1st of September, amounting to over $325, he was to hand over to Carlton & Sons, less ten per cent. commission on sales. While proceeding to sell umbrellas, the plaintiff added to the stock and purchased goods of that character to an amount (as he testified) of upwards of $1,000, and after he had sold about half the stock so purchased from Carlton & Sons, the defendants, on an execution in favor of the Messrs. Schloss, seized and took away all the remaining stock of umbrellas, including such as had been purchased by the plaintiff after the transaction with Carlton.

The evidence presented by C. C. Carlton, in opposition to plaintiff's positive testimony denying that either he, or any one in his behalf, remained in possession of the business after July 1st, is of the most meagre and unreliable character, and could scarcely warrant any finding of such possession.

The testimony fails to show that the price paid by the plaintiff for the seven dozen umbrellas, was so inadequate as to even suggest that any unconscionable advantage was being taken by him of the Carltons' necessities.

The plaintiff denied any knowledge of the Carltons' insolvency, and even of their being embarrassed, and there is no shadow of testimony tending to show that he acted with intention to defraud the Carltons' creditors.

The defendants, therefore, could not, by force of their execution, assert any rights but such as could have been enforced by the Carltons.

The transaction, as evidenced by the bill of sale and counter-agreement, was of an absolute sale, with a right to

repurchase within two months upon the terms stated. It bore no feature of a mortgage, since no debt or obligation existed on the part of the Carltons for the $300 paid to them for the umbrellas. (*Southworth* v. *Bennett*, 58 N. Y. 659.): It was not a *conditional* sale, but was on its face, at most, a sale with a right to repurchase. The legal effect of the agreement could not, as between the parties, or those claiming under them, be varied by *parol*, except it was shown to have been a mere device for usury. Being neither a mortgage nor a conditional sale, the property in the seven dozen umbrellas was absolute in the plaintiff, and for his agreement to resell, he was only liable as upon the executory agreement giving the Carltons the right of repurchase. Considering the absence of any testimony showing that the value of the umbrellas sold plaintiff exceeded the $300 paid for them, it is difficult to understand how the question of usury could be made available to the defense in any aspect of the transaction.

Assuming, however, as claimed by the defendants, that notwithstanding this sale to plaintiff, the Carltons, through their clerks and agents, continued in possession, and that it was presumptively fraudulent as against the creditors of the vendors, the plaintiffs had a right to have the *bona fides* of the transaction submitted to the jury.

The judge erred in instructing the jury (aside from the question of possession) that "if it was a conditional sale, then it was void as against creditors." In no aspect of the law can such a proposition be maintained. A conditional sale is, in all cases, operative as against the creditors of the vendor, and because on *condition* no fraud on creditors can be imputed to, or necessarily inferred from, the transaction.

He also erred in charging that "if it was a mortgage it was also *void*, for the reason that Mr. Schloss had the right to take possession of the goods under the execution, they being in the possession of Mr. Carlton, and being to all intents and purposes his goods." In this connection plaintiff asked the judge to charge the jury "that if. the jury should find that Carlton was in possession, this would only cast.

upon the plaintiff the duty of showing that the transaction was free from fraud with reference to the creditors, as far as he was concerned." If the instrument was a mortgage the prescribed time for redemption had long since expired, and the *title* was absolute in the mortgagee. If the transaction was effectual as a sale as between the Carltons and the plaintiff (and that certainly was an issue to be determined by the jury), the question of the nature of the debtors' possession presented by the plaintiff was one that ought to have been distinctly stated and explained by the judge to the jury. His refusal to charge as requested was a distinct intimation to them that it was not a matter for their consideration. The exception was well taken.

The judgment should be reversed, and a new trial had, with costs to abide the event.

LARREMORE and J. F. DALY, JJ., concurred.

Ordered accordingly.